UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:15-CV-14319-ROSENBERG/WHITE

ALFRED RHINER,

    Plaintiff,

v.

JULIE JONES *et al.*,

    Defendants.

_____/

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court upon the Motion to Dismiss [DE 30] filed by Defendants Julie Jones, Lars Severson, and Mr. Snyder, which was previously referred to the Honorable Patrick A. White for a Report and Recommendation. *See* DE 3. On June 24, 2016, Magistrate Judge White issued a Report and Recommendation [DE 55] recommending that the Motion be granted to the extent that Plaintiff's claims against Defendant Jones and Plaintiff's claims for injunctive relief be dismissed, and that the Motion be denied in all other respects.

On July 5, 2016, Defendants Severson and Snyder filed Objections [DE 57] to the Report and Recommendation. On July 11, 2016, Plaintiff filed a Motion for Reconsideration in Dismissing Julie Jones as a Defendant, and all Injunctive Relief Denied—and/or—Motion Requesting Leave to Amend Plaintiff's Original Complaint [DE 58], which the Court construes in part as Plaintiff's Objections to the Report and Recommendation and in part as a motion for leave to amend his Complaint [DE 1]. On July 18, 2016, Plaintiff also filed a Motion in Opposition to Defendants' Objections to the Report and Recommendation [DE 59], which the Court construes as Plaintiff's Response to Defendants' Objections. On July 19, 2016, Defendants

Jones, Severson, and Snyder filed a Response to Plaintiff's Motion for Reconsideration [DE 61], requesting that the Court adopt the Report and Recommendation with regard to the dismissal of Plaintiff's claims against Defendant Jones and Plaintiff's claims for injunctive relief, and that the Court deny Plaintiff leave to amend his Complaint. Because the Court adopts Magistrate Judge White's Report and Recommendation and dismisses Plaintiff's claims for injunctive relief, Plaintiff's proposed amendment to add the former Secretary of the Florida Department of Corrections as a defendant would be futile. To the extent Plaintiff seeks leave to amend his Complaint, his Motion for Reconsideration in Dismissing Julie Jones as a Defendant, and all Injunctive Relief Denied—and/or—Motion Requesting Leave to Amend Plaintiff's Original Complaint [DE 58] is therefore **DENIED**.

On July 22, 2016, Plaintiff filed a Notice to Clerk [DE 62] and attached an amended Motion for Reconsideration, which the Court construes as supplemental objections to the Report and Recommendation. On September 13, 2016, Plaintiff filed a Motion to Amend—Add to the Plaintiff's Motion for Reconsideration—Objection to Recommendation in Dismissing Julie Jones and All Injunctive Relief [64]. The following day, Defendants Jones, Severson, and Snyder filed a Response to Plaintiff's Motion to Amend [DE 65], noting among other things that the time for objections has long since passed. The Court agrees. Plaintiff's Motion to Amend—Add to the Plaintiff's Motion for Reconsideration—Objection to Recommendation in Dismissing Julie Jones and All Injunctive Relief [64] is therefore **DENIED**.

The Court has conducted a *de novo* review of Magistrate Judge White's Report and Recommendation, has reviewed Plaintiff's and Defendants' Objections thereto, has reviewed the entire record, and is otherwise fully advised in the premises.

Upon review, the Court finds Magistrate Judge White's recommendations to be well

reasoned and correct. The Court agrees with the analysis in Magistrate Judge White's Report and Recommendation and concludes that Defendants' Motion to Dismiss should be granted to the extent that Plaintiff's claims against Defendant Jones and Plaintiff's claims for injunctive relief should be dismissed, and that the Motion should be denied in all other respects, for the reasons set forth therein. The Court also finds, however, that Defendants' Objections to the Report and Recommendation warrant a discussion.

Defendants assert that the conclusions reached in Magistrate Judge White's Report and Recommendation rest "in large part upon an Initial Report that was entered without objection before Defendants were served," and that Magistrate Judge White did not properly consider the arguments presented in Defendants' Motion to Dismiss. *See* DE 57 at 2. Having reviewed Magistrate Judge White's Report and Recommendation, the Court notes that each of the arguments raised by Defendants was considered and addressed. *See* DE 55 at 8–18. Nevertheless, the Court supplements Magistrate Judge White's Report and Recommendation to explain in greater detail its conclusion that Plaintiff has sufficiently stated a claim and that Defendants Severson and Snyder are not entitled to qualified immunity at this stage of the proceedings.

**A. Failure to State a Claim**

In his Complaint, Plaintiff asserts that Defendants violated his Eighth Amendment rights by failing to prevent a violent attack perpetrated against Plaintiff by several other inmates.

> A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury. To establish an Eighth Amendment claim of deliberate indifference, [a plaintiff] must allege facts sufficient to show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."

*Lane v. Philbin*, No. 14-11140, 2016 WL 4487983, at *3 (11th Cir. Aug. 26, 2016) (internal citations omitted).

3

### 1. **Substantial Risk of Serious Harm**

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Id.* (citing *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)). To meet this standard, a plaintiff must "allege conditions that were sufficiently serious to violate the Eighth Amendment, i.e., conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Id.* (citing *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." *Id.* (quoting *Harrison v. Culver*, 746 F.3d 1288 (11th Cir. 2014)).

In *Lane*, the Eleventh Circuit concluded that the plaintiff had "sufficiently set out a substantial risk of serious harm" where his complaint alleged: that the inmate population of the building where he was housed consisted of 90% gang members; that inmates who were not gang-affiliated were robbed and stabbed; that there were numerous stabbings and beatings; that only one officer supervised two separate 50-man dorms; that the building housed dangerous predators; that inmates brought back items from their work on the maintenance detail, and took materials from light fixtures and shelves, to make weapons; that weapons were not confiscated during searches by prison officials; and that he was stabbed several times by a gang-affiliated inmate. *See Lane*, 2016 WL 4487983, at *3; *see also id.* (citing *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1027–28 (11th Cir. 2001)) ("[P]laintiff satisfied the substantial risk of serious harm element of an Eighth Amendment claim at the pleading stage by alleging that inmates dismantled the jail facility to make weapons, that inmates had ready access to weapons, and that the prison

provided inadequate supervision of inmates."); *id.* (citing *Williams v. Edwards*, 547 F.2d 1206, 1211 (5th Cir. 1977) ("[E]asy access by inmates to certain materials and resources—which resulted in the widespread possession of weapons—contributed to a substantial risk of serious harm at a correctional facility.").

Likewise, in the instant case, Plaintiff's Complaint sufficiently alleges a substantial risk of serious harm. Plaintiff alleges that the area where he was attacked had "no security (officers or cameras) to bring order to dissuade attacks," and "is known to inmates and officers alike as a 'blind-spot' where multiple assaults have occurred in the past. DE 1 ¶ 20; *see also id.* ¶ 28 ("Plaintiff was assaulted in one of the few spots in Okeechobee CI that is known to be a 'blind spot/death trap' due to the lack of security in this particular area. It has been the place of many violent assumption [sic], and still the Defendants failed to provide adequate security to minimize the danger in this area. . . . [T]he record of assaults in and around this area should have called for an officer to be stationed there when this area is in use (meals being served) or camera being placed in this area to discourage any further assaults from happening in this particular 'hot spot.'"); *id.* ¶ 29 ("It is well-documented that throughout the years that the back entrance to Okeechobee C.I.'s chowhall [where Plaintiff was attacked] is a highly volatile area due to its lacking adequate security (officer or camera) and not being viewable from any angle as it is tucked off by itself."); *id.* ¶ 33 ("The Plaintiff requests that cameras be placed at the back entrances of Okeechobee CI's dining room/chow hall, which would immediately mitigate the multiple assaults that occur there due to its 'blind spot' reputation."). Plaintiff also alleges that Defendants "house[d] him, who is a 'neutron' (non-Gang member) with known active violent gang members [and] continuously issued razors to these active violent gang members." *Id.* ¶ 25. In addition, Plaintiff alleges that "Neutrons (non-gang members) are often targeted by active

gang members." *Id.* ¶ 26.

Plaintiff's allegations, "taken together, permit a reasonable inference that [the area where he was attacked] was a place with inadequate supervision of dangerous inmates who possessed weapons, and where violence and terror were the norm." *Lane*, 2016 WL 4487983, at *3; *see also Gates v. Collier*, 501 F.2d 1291, 1309 (5th Cir. 1974) ("Each factor separately . . . may not rise to constitutional dimensions; however, the effect of the totality of these circumstances is the infliction of punishment on inmates violative of the Eighth Amendment.").

### 2. Deliberate Indifference

"The second element of an Eighth Amendment claim—the defendant's deliberate indifference to a substantial risk of serious harm—'has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane*, 2016 WL 4487983, at *4 (quoting *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)). Because the first component is subjective, Plaintiff must "allege sufficiently that the prison officials he sued actually knew that he faced a substantial risk of injury." *Id.* (citing *Caldwell*, 748 F.3d at 1099). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Inferences from circumstantial evidence, however, can be used to show that a prison official possessed the necessary knowledge." *Id.* (citing *Caldwell*, 748 F.3d at 1099).

Plaintiff's Complaint sufficiently alleges Defendant Severson's and Defendant Snyder's deliberate indifference to a substantial risk of serious harm. For example, Plaintiff repeatedly

alleges that the lack of security in the area where he was attacked resulted in numerous attacks by inmates on other inmates in that area, and that these facts were well-known among both inmates and prison staff. *See* DE 1 ¶¶ 20, 28, 29, 33. In light of these allegations, it can reasonably be inferred that both Defendant Severson and Defendant Snyder—as Warden and Assistant Warden,[1] respectively—were aware of these facts. *See Lane*, 2016 WL 4487983, at *4. Plaintiff also alleges that "Defendants knowingly put the Plaintiff's life in danger on a continuous basis as it houses him, who is a 'neutron' (non-Gang member) with known active violent gang members continuously issued razors to these active violent gang members, and who continuously ignored the lack of security to a highly volatile area within their institution." DE 1 ¶ 25. In addition, Plaintiff alleges: "It is common knowledge and highly documented that Neutrons (non-gang members) are often targeted by active gang members (See the recorded number of assaults gang members on non-gang members in the past five years from within the Florida DOC)." *Id.* ¶ 26. Finally, Plaintiff alleges that "[t]he Defendants have known of all three of the above vulnerabilities [assaults by gang members on non-gang members, assaults with state-issued razors, and assaults in a known blind-spot] within their prison system, and the past records of assaults prove their deliberate indifference to the Plaintiff's serious safety/security needs." *Id.* ¶ 30.

Accordingly, Plaintiff has alleged sufficient facts from which the Court may infer that Defendants had subjective knowledge of a risk of serious harm, and that Defendants disregarded that risk by conduct that is more than mere negligence. *See Lane*, 2016 WL 4487983, at *4. Contrary to Defendants' assertion, *pro se* Plaintiff's use of the phrase "gross negligence/incompetence" throughout his Complaint does not compel the Court to conclude

---

[1] Plaintiff also identifies Defendant Snyder as "Assistant Warden of Security." *See* DE 1 ¶ 28. This allegation suggests that, based on his job title, Defendant Snyder "was in a position to be subjectively aware of security-related issues" in the area where Plaintiff was attacked. *See Lane*, 2016 WL 4487983, at *5.

7

otherwise.

## B. <u>Qualified Immunity</u>

Where a plaintiff has demonstrated on the face of his complaint that defendants violated his Eighth Amendment rights, "qualified immunity will still attach unless that right was clearly established at the time [defendants] failed to act." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1325 (11th Cir. 2016). "In determining whether a right is clearly established, the relevant, dispositive inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Caldwell*, 748 F.3d at 1102). "Thus, the 'salient question' is whether, looking to the decisions of the Supreme Court, the Eleventh Circuit, and the [Florida] Supreme Court, 'the state of the law' in [September 2014] gave [Defendants] 'fair warning' that their conduct was unlawful." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The Court concludes that, accepting Plaintiff's allegations as true, Plaintiff's Complaint defeats qualified immunity and establishes Defendants' violation of a clearly established right. In reaching this conclusion, the Court relies on a case decided by the Eleventh Circuit in 2001, which in turn relies on a number of earlier decisions by the Eleventh and Fifth Circuits.[2] *See Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1033 & n.12 (11th Cir. 2001) (citing *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995)); *Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977); *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974)). In *Marsh*, Plaintiffs—both of whom were attacked by fellow inmates while incarcerated—alleged that the building was "extremely dilapidated," and "[i]nmates were able to obtain makeshift weapons by cannibalizing parts of the decaying building." This problem was compounded by a "[l]ack of adequate monitoring of the

---

[2] All decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981 are binding precedent in this circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

inmates," including broken locks on inmates' cell doors, "[n]o visual or audio surveillance system," and insufficient prison staff to supervise inmates. In addition, "[n]o system of classification existed at the Jail: pretrial detainees were housed with convicted inmates, nonviolent offenders with violent offenders, juveniles with adults, and mentally ill persons with those in good mental health." *See Marsh*, 268 F.3d at 1023–25. In sum, the *Marsh* Court described the facts of the case before it as follows:

> In this case, Plaintiffs allege these things: 1) widespread possession of weapons by inmates, 2) weapons were not confiscated from prisoners, 3) no segregation of nonviolent inmates from violent inmates, pretrial detainees from convicted criminals, juveniles from adults, or inmates with mental disorders from those without mental disorders, 4) no discipline of inmates for violent behavior and previous assaults on other inmates, 5) at times the Jail housed more prisoners than the cells could accommodate, 6) the Jail was understaffed, 7) inadequate supervision by jailers, and 8) unsupervised prisoner trustees had custodial duties for other prisoners.

*Id.* at 1033 n.12. The court concluded that it had been clearly established that it was "an unreasonable response for an official to do nothing when confronted with prison conditions—like the conditions alleged in [that] case—that pose a risk of serious physical harm to inmates." *Id.* at 1034. Accordingly, the defendants were not entitled to qualified immunity:

> In this case, Plaintiffs allege that no measures were taken to improve conditions at the Jail. For example, the locks on the cells were never fixed; and supervision of the inmates was never improved. We conclude, therefore, that Plaintiffs adequately allege facts which (if true) show that, at the time of the incident, the Sheriff's acts were not even arguably reasonable in the light of the clearly established law. On the jail conditions, the Sheriff—at the Rule 12 stage—is unentitled to qualified immunity for the claim that she was deliberately indifferent to the threat of serious harm to Plaintiffs.

*Id.*

In concluding that the defendants had violated a clearly established right, the *Marsh* court relied on *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995), *Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977), and *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974). The Marsh court

9

described the facts of these cases as follows:

> In *Hale*, evidence was presented of these conditions: 1) prisoners were not segregated based on their proclivity for violence, 2) there was only one jailer on duty, 3) the jailer's quarters were out of earshot and eyesight of the prisoners' cell, and 4) fights occurred between inmates on a regular basis resulting in injuries requiring medical attention and hospitalization. In *Williams*, the court concluded that the totality of the circumstances posed a substantial risk of serious harm due to inmate violence. The circumstances in the prison showed this environment: 1) widespread possession of weapons, 2) no confiscation of weapons, 3) no segregation of violent from nonviolent inmates, 4) previous assaults, 5) overcrowding, 6) too few guards to supervise properly inmates, and 7) multiple reports of stabbing, some resulting in death. In *Collier*, the court concluded that these conditions pose a serious risk of harm to inmates: 1) possession of weapons by prisoners, 2) no established procedure for confiscating weapons, 3) lack of classification according to severity of offense, 4) no procedure for reporting previous assaults, 5) overcrowding, 6) lack of supervision by guards, 7) custodial responsibility assigned to incompetent and untrained inmates, and 8) at least 27 reported instances of armed assaults by inmates on other inmates.

*Id.* at 1033 n.12.

In the instant case, Plaintiff alleges that violent gang members were housed with non-gang members, that gang members regularly attacked non-gang members, that razor blades were issued to violent inmates, that many inmates used these razor blades as weapons against other inmates, that prison officials did not monitor whether inmates traded in their old razor blades for new ones, that there was inadequate supervision and security in the area where he was attacked, and that there have been many attacks in that area due to the lack of supervision and security there. *See* DE 1. These facts are sufficiently similar to those in *Marsh*, *Hale*, *Williams*, and *Collier* to conclude that Defendants had fair warning that their failure to act was unlawful. *See Bowen*, 826 F.3d at 1325.

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Magistrate Judge White's Report and Recommendation [DE 55] is **ADOPTED**.

2. Defendants' Motion to Dismiss [DE 30] is **GRANTED IN PART AND**

      **DENIED IN PART**. Plaintiff's Complaint [DE 1] is **DISMISSED** only as to all claims against Defendant Julie Jones and all claims seeking injunctive relief.

3. Defendants Lars Severson and Mr. Snyder shall answer Plaintiff's Complaint within seven (7) days after the date of this Order.

4. Plaintiff's Motion for Reconsideration in Dismissing Julie Jones as a Defendant, and all Injunctive Relief Denied—and/or—Motion Requesting Leave to Amend Plaintiff's Original Complaint [DE 58] is **DENIED**.

5. Plaintiff's Motion to Amend—Add to the Plaintiff's Motion for Reconsideration—Objection to Recommendation in Dismissing Julie Jones and All Injunctive Relief [64] is **DENIED**.

    **DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 20th day of September, 2016.

                                                        _____
Copies furnished to:                                  ROBIN L. ROSENBERG
Counsel of Record                                  UNITED STATES DISTRICT JUDGE
Alfred Rhiner